UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IHANCA DUQUESNE TELLECHEA,                    DECISION AND ORDER

                Plaintiff,                    12-CV-6447 CJS

      vs.

CAROLYN W. COLVIN, Commissioner,

                Defendant.

_____


**APPEARANCES**


For the Plaintiff:                    Catherine M. Callery, Esq.
                                          Empire Justice Center
                                          One West Main Street, Suite 200
                                          Rochester, New York 14614
                                          (585) 295-5727

For the Defendant:               Grace M. Carducci, A.U.S.A.
                                          Kathryn L. Smith, A.U.S.A.
                                          United States Attorney's Office
                                          100 State Street, Fifth Floor
                                          Rochester, New York 14614
                                          (585) 263-6760


**INTRODUCTION**

      This Supplemental Security Income case is before the Court on the Commissioner's motion for judgment on the pleadings, filed on June 10, 2013, ECF No. 12, and Plaintiff's cross-motion, also for judgment on the pleadings, filed on the same day, ECF No. 14. For the reasons stated below, the Commissioner's decision is reversed and the matter is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**PROCEDURAL BACKGROUND**

Ihanca Duquesne ("Plaintiff") filed an application for Supplemental Security Income (SSI) benefits on January 9, 2009. R. 161–66. She alleged the onset of her disability as November 11, 2008. R. 161.[1] The Commissioner denied her application on April 21, 2009. R. 63–77. On June 6, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 30–32. It was held by video teleconferencing on July 1, 2010, with ALJ Joseph Grow in Baltimore, Maryland. R. 108–34, 152–60. Plaintiff appeared and testified in Rochester, New York. R. 33–60 and was represented by Doris M. Cortes, a paralegal with the Empire Justice Center. A vocational expert also testified. R. 54–59. On August 5, 2010, the ALJ denied Plaintiff's claim, finding that she could perform work at the sedentary exertional level. R. 10–28.

Plaintiff filed a timely request for Appeals Council review, accompanied by a memorandum of law filed by her representative. R. 9, 216–17. On June 23, 2012, the Appeals Council denied Plaintiff's request to review her claim. R. 1–8. Both sides now move for Judgment on the Pleadings.

**STANDARDS OF LAW**

*Jurisdiction and Scope of Review*

Section 405(g) of Title 42, U.S. Code, grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs

---

[1] Plaintiff had previously been awarded disability benefits in 2004. She testified that her benefits were discontinued in 2006 due to her immigration status. R. 48. Pursuant to the Personal Responsibility and Work Opportunity Act of 1996 and subsequent amendments, SSI benefits for Cuban refugees such as Plaintiff were time-limited. Plaintiff began receiving SSI disability benefits based on an application filed in September of 2012. This appeal thus involves a "closed period" of disability.

that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938). Section 405(g) limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (holding that the reviewing court does not try a benefits case *de novo*). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating a plaintiff's claim. The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker*, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

*Five-step sequential analysis*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Section 423(d)(1)(A); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional

capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501. (citations omitted).

## DISCUSSION

### *The ALJ's Residual Functional Capacity Finding*

Plaintiff contends that the ALJ's Residual Functional Capacity ("RFI") finding is erroneous because it failed to take into consideration her subjective complaints of pain and the diagnosis from two treating physicians that she suffers from fibromyalgia. Further, Plaintiff argues that the ALJ's determination that her subjective complaints of pain were not consistent with *his* RFC determination was not a basis for discounting her complaints. The Commissioner responds that the ALJ must have considered the fibromyalgia diagnosis, since he stated in the "Issues" portion at the beginning of his decision that, "[a]fter careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability…." R. 16.

The Court finds that the ALJ's analyses of Plaintiff's RFC, and of her subjective complaints of pain, are erroneous and require reversal of the Commissioner's Decision. First, despite stating that he considered all the evidence, not once in his decision does the ALJ mention the fibromyalgia diagnosis. That diagnosis is in the record from two treating physicians: (1) Ana Arango, M.D., stated, "[s]he has fibromyalgia," in her undated[2] report made two months after Plaintiff's hysterectomy; R. 316–17; (2) Dr. Arango also stated the same diagnosis in her report of November 2, 2009; R. 319;

---

[2] The Commissioner stated in her memorandum of law that the report was made on March 15, 2010. Comm'r Mem. of Law at 11, Jun. 10, 2013, ECF No. 12-1.

(3) Pierre Jean Charles, M.D., also listed fibromyalgia in his assessment report dated May, 24, 2010; R. 335. Despite listing Plaintiff's diagnosis of chronic regional pain syndrome with reflexive sympathetic dystrophy, R. 18, the ALJ made no mention of fibromyalgia in his findings. Not only was Plaintiff's fibromyalgia diagnosis in the medial records, her representative stated at the hearing, "[t]he claimant is limited to less than a full range of sedentary work based on her combination of impairments that include fibromyalgia…." R. 37 & 39.

As the Second Circuit recognized a decade ago in *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003), "fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Id.* at 108 (quoting *Preston v. Sec. of Health and Human Servs.,* 854 F.2d 815, 818 (6th Cir. 1988)).

The ALJ's failure to specifically take into consideration Plaintiff's fibromyalgia in making his RFC determination is particularly problematic here since, in an exercise of circular reasoning, he used his RFC determination to discount Plaintiff's subjective complaints of pain. In that regard, the ALJ concluded that, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 20.

The omission of an impairment at step two of the sequential analysis could be considered harmless error if the omitted impairment is later discussed in the ALJ's analysis. However, where, as here, it is not even mentioned in the analysis, the matter must be remanded for a determination of whether the impairment, either by itself, or in combination with the other impairments the ALJ did find, is disabling. As the Second

Circuit stated this month in its decision in *Cichocki v. Astrue*, No. 12-3343-cv, 2013 U.S. App. LEXIS 18434 (2d Cir. Sept. 5, 2013):

> The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *2.

*Cichocki*, 2013 U.S. App. LEXIS 18434, *11.

The Commissioner's arguments that the Record supports a conclusion that Plaintiff failed to follow prescribed treatment, that the diagnosing doctors did not set forth an objective basis for the diagnosis, and that the diagnosing doctors did not set forth any limitations as a result of the fibromyalgia diagnosis, do not excuse the ALJ's failure. First, the Record does show that Dr. Arango did find "multiple tender points [on her] upper back, upper and lower extremities," R. 318–19, and on her chest, R. 322 & 323. Second, the Record does not clearly show that Plaintiff failed to follow her doctor's advice and treatment, R. 318 ("She discontinued lyrica 2 months ago because it did not help."), R. 255 (medication was renewed), and if the diagnosing doctors did not specify any limitations as a result of the diagnosis, it was the ALJ's duty to seek clarification from the doctors. *See* SSR 96-7p (ALJ under a duty to inquire about why a patient failed to follow prescribed treatment before drawing inferences); 20 C.F.R. §§ 404.1512(e), 416.912(e)(1) ("The regulations thus provide that, '[w]hen the evidence we receive from your treating physician ... is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... to determine whether the additional information we need is readily available."). The ALJ's decision fails to meet the requirements of the Commissioner's regulations and overlooked significant evidence. It

must, therefore, be reversed.

***Treating Physician Rule***

The opinion of a treating physician, if well supported and not contradicted, is entitled to controlling weight. 20 C.F.R. §416.927(a)(2) Plaintiff argues that, although the opinions of treating physicians Drs. Schrock and Finkbeiner, that Plaintiff is disabled, were conclusory, the ALJ nevertheless erred in relying on the opinion of the consulting examiner, Sandra Boehlert, M.D. Dr. Schrock completed a Disability Status Report on November 6, 2003. R. 259. He diagnosed Plaintiff with chronic regional pain syndrome, left foot, and checked a box labeled, "Totally Disabled." Dr. Finkbeiner[3] reported on an office visit with Plaintiff that took place on January 30, 2006. R. 260. In his report, Dr. Finkbeiner concluded that Plaintiff exhibited clinical lateral left forefoot pain secondary to a probable RSD (complex regional pain syndrome). In an examination on June 11, 2007, Dr. Finkbeiner informed Plaintiff that his review of an X-ray of her left knee showed no abnormalities and that her pain symptoms were likely related to her chronic RSD and perhaps an element of fibromyalgia. R. 261. He reached a similar conclusion that Plaintiff's RSD was causing the pain she experienced, in office visits on May 12, 2008, and November 10, 2008. R. 264, 265. Dr. Finkbeiner also completed a Disability Status Report in which he diagnosed RSD and circled the words, "Totally disabled." R. 266.

Dr. Boehlert examined Plaintiff on February 20, 2009, for the Division of Disability Determination. R. 273. Dr. Boehlert related the history of Plaintiff's left foot fracture in 2004, which could not be property cast at the time due to swelling. Plaintiff reported to Dr. Boehlert that the pain initially went from her foot to her knee, then her hip, and at the

---

[3] Dr. Finkbeiner also noted that Dr. Schrock had retired. R. 260.

time of the examination, was now in her back as well. Plaintiff reported she was unable to do her chores at home, and was unable to do any heaving walking, bending, or twisting. R. 273. Plaintiff also reported suffering muscular chest pain with twisting movement of her body, or her arms, and that this pain has been going on since 1985. Dr. Boehlert noted "severe hypersensitivity to the left leg from the knee down and also around the left hip and the low back to soft touch." R. 276. Dr. Boehlert concluded that Plaintiff "has moderate limitation to any heavy ambulation, heavy lifting, or pushing or pulling in the standing position." R. 276.

Plaintiff argues that Dr. Boehlert's use of the term, "moderate limitation," is, without more, inconclusive with regard to the level of physical exertion of which Plaintiff is capable. Plaintiff maintains that using a term such as "moderate," gave the ALJ no basis for concluding that she was capable of the physical exertion necessary for sedentary work. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) ("Dr. Mancheno's use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work."). The Court concludes that the ALJ erred in relying on the non-treating source opinion to overcome the opinions of Plaintiff's treating physicians.

Further, other medical source information in the record, specifically from Physician Assistant James Sutton, supported the conclusions of Drs. Schrock and Finkbeiner that Plaintiff could not perform the exertional limitations of even sedentary work. However, the ALJ rejected Sutton's opinion without considering the requirements

of SSR 06-3p, which states in pertinent part, "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR-06-3p (2006).

The Court finds that the ALJ failed to follow the treating physician rule in rejecting the opinions of Drs. Schrock and Finkbeiner on the basis of Dr. Boehlert's "moderate limitation" assessment without considering either the other medical source information, or seeking additional information. *See, Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). Therefore, the Commissioner's decision must be reversed on this ground as well.

***Global Assessment of Functioning ("GAF")***

The ALJ noted that Plaintiff had a GAF score of 60 in 2004, which he stated, "generally signifies someone with moderate-to-mild depressive symptoms, such as flat affect and occasional panic attacks indicated." R. 21. On March 13, 2007, however, Plaintiff was diagnosed by Carlos Bahr, LMSW, Primary Therapist at Unity Health System, with a GAF score of 50. R. 232. The ALJ offered that the average of the two scores equaled 50, R. 21, which he stated "suggests only moderate depressive symptoms." R. 21.[4] As this Circuit observed, a GAF "in the range of 41 to 50 indicates '[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).' DSM–IV, at 34." *Zabala v.*

---

[4] Despite the ALJ's apparent mathematical error, his conclusions concerning a GAF score of 50 is wrong.

*Astrue*, 595 F.3d 402, 406 n.2 (2d Cir. 2010). The ALJ discounted the GAF scores, finding that they were both from non-acceptable medical sources. R. 21. Nevertheless, to the extent he considered the average score to be 50, he erroneously stated that the conclusion to be drawn from that score was consistent with only moderate symptoms of depression. The ALJ's conclusion on the GAF score, considered with the other errors already listed above, leads the Court to conclude that the Commissioner's decision to deny benefits was not based on substantial evidence.

### *Psychiatric Impairments*

Plaintiff maintains that the ALJ improperly rejected the February 20, 2009, opinion of consulting psychologist Lynn Lambert, Ph.D., who concluded that Plaintiff,

> is likely to be moderately to seriously challenged to maintain attention and concentration, maintain a regular schedule, learn new tasks and perform complex tasks independently, relate adequately with others, and appropriately deal with stress, all due to serious and very regular depressive episodes, sapping energy, and motivation, leading to social withdrawal, and interfering with concentration and planning abilities.

R. 271. The ALJ found that the weight of the evidence did not support Dr. Lambert's opinion, since, "the claimant has a history of noncompliance with her psychiatric medications, but her condition appears to be stable when she does follow prescribed treatment." R. 22. With regard to the "history of noncompliance" concerning medications, the Record does not support the ALJ's conclusion. A February 8, 2008, Progress Note from Unity Health System states, "[n]o refills were given on [prescriptions from November 29, 2007] which would indicate that ct has not taken meds past 12/29[/07]." R. 255. In the same note, however, the writer indicated that the pharmacist confirmed that on February 1, 2008, Plaintiff had medications refilled, some with an original issue date of November 28. Consequently, the assumption that Plaintiff was not

taking her medications and was, therefore, not compliant with treatment, is belied in the Record. The ALJ's reliance on that assumption to disregard Dr. Lambert's assessment, R. 22, was erroneous, as was his conclusion that when she did follow prescribed treatment, her condition was stable, R. 22. In support of the latter conclusion, the ALJ cited to Exhibit 7F, p. 9, and Exhibit 18F, p. 5. The first, Exhibit 7, p.9, is R. 258, and is an opinion by Rory P. Houghtalen, M.D., that Plaintiff "is a patient who has not adhered to medication recommendations and is seen as generally poorly adherent to rx plan." R. 258. However, the Record shows that Plaintiff *was* obtaining refills for her prescription medication, and that her husband was the one who gave her her pills. R. 255. Exhibit 18F, p. 5, is Physician Assistant Sutton's notation at an office visit (the date is not specified), her anxiety and depression were stable and that she received a refill for Paxil and Trazodone. The ALJ's decision does not explain how a Physician Assistant's assessment of Plaintiff's anxiety and depression trumps an assessment by a psychologist.

***Vocational Expert***

Because Plaintiff's non-exertional limitations significantly diminished her ability to perform the full range of sedentary positions, the ALJ used the testimony of a vocational expert ("VE"). *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986). In order to obtain useful information from a VE, however, the hypothetical question posed must take into account all of a Plaintiff's limitations. Here, Plaintiff argues that the questions posed by the ALJ were premised on his faulty RFC finding, and, consequently, the VE's testimony does not provide substantial evidence to support the ALJ's decision. The Court has already found, as discussed above, that the ALJ's RFC determination was erroneous.

Since his questions to the VE were all premised on the assumption that Plaintiff could meet the physical performance expected of sedentary employment, the VE's testimony does not support the ALJ's determination, unless that RFC assumption was correct, something that remains to be seen on remand.

Furthermore, the only evidence of Plaintiff's ability to sit and stand during a working day is the Physican's Assistant's conclusion that she could sit for less than six hours in an eight hour workday, R. 310, and reported she was limited in her upper and lower extremities due to chronic pain. Dr. Boehlert, on whom the ALJ placed great reliance, saw Plaintiff one time, noted that she could walk, get onto and off of the examination table, and could squat. From that limited examination, Dr. Boehlert opined that Plaintiff had no limitations, other than a moderate limitation to any heavy ambulation, heavy lifting, or pushing and pulling in the standing position. R. 276.

In addition to the problems with the ALJ's RFC conclusion, one of his questions to the VE was whether an individual who was off task 25% of the time would be able to work. R. 59. The VE stated that limitation would eliminate all the jobs in the national economy. *Id.* Plaintiff argues that this limitation (off task 25% of the time) more accurately reflects Dr. Lambert's opinion of Plaintiff's limitations. The Court determines that the ALJ's rejection of Dr. Lambert's opinion was erroneous. Consequently, the ALJ's inadequately analyzed the VE's testimony that Plaintiff was unable to perform any job in the national economy. As a result, his conclusion, that she could perform the three jobs the VE testified about, is not supported by substantial evidence.

***Res Judicata***

Plaintiff contends that since she was previously found disabled for the same physical impairments for which she now seeks SSI, and lost her SSI payments only because the grace period granted to Cuban refugees expired, the Commissioner ought to be bound by his previous determination. The Commissioner counters that her prior determination is irrelevant and that this Court's prior decision in *Singletary v. Astrue*, No. 07-CV-6025-CJS, 2008 WL 1323892 (W.D.N.Y. Jan. 12, 2008), was wrongly decided. *See* Acquiescence Ruling 98-4(6).

Turning first to the Court's ruling in *Singletary*, the same U.S. Attorney's office that represents the Commissioner in this case, also represented the Commissioner in *Singletary*. The Commissioner elected not to appeal the Court's decision in that case and the Court notes that the Southern District in *Richardson v. Astrue*, No. 10 Civ. 9356 (DAB) (AJP), 2011 WL 2671557, *12 (S.D.N.Y. Jul. 8, 2011) observed that the question of *res judicata* under the circumstances present here is still open. In *Singletary*, this Court found that the decision in *Drummond v. Commissioner of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), in which the Sixth Circuit held that, "[r]es judicata applies in an administrative law context following a trial type hearing," was persuasive. *Id*. at 841. Further, this Court also cited to *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984) in which the Court of Appeals stated that, "[t]he view that the Secretary [now Commissioner] may simply disregard a prior finding that a particular medical condition is disabling is inconsistent with the case law in other circuits." The opinion cites to Third, Eleventh, Eighth, Seventh, Ninth, First and Fifth Circuit cases in support of that proposition, and concludes,

> [t]hese cases stand for the proposition that, having once established that a particular condition is disabling, a claimant is entitled to a presumption that as long as there is no change in the condition itself, or in the governing statutes or regulations, neither will the statutory classification of disability be changed.

*De Leon*, 734 F.2d at 937. Though *De Leon* did not address whether *res judicata* applied to a prior disability determination, the language from that case supports the conclusion drawn by the Sixth Circuit in *Drummond*.

The Court notes that Plaintiff was originally found disabled and granted benefits from 2004 until 2006, when benefits were discontinued due to Plaintiff's immigration status. R. 216. The Record does not indicate whether the prior grant of benefits involved a decision by an ALJ.[5] Because the Sixth Circuit's decision in *Drummond* and this Court's decision in *Singletary* relied on a prior determination by an administrative law judge, those decisions are distinguishable from the present case. *See Drummond*, 126 F.3d at 842 ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."); *Singletary*, 2008 WL 1323892, *3 (later ALJ determined she was not bound by determination made by prior ALJ). Although the Court cannot apply *res judicata* with regard to the earlier decision, in fairness, the prior decision to grant benefits, and the later decision to grant benefits, are relevant to the ALJ's determination on this application. *See Batista v. Barnhart*, 326 F. Supp. 345, 355 (E.D.N.Y. 2004) (evidence of diagnoses post-dating the relevant period should be considered by ALJ); *see also Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

---

[5] The Court has not considered the affidavit attached to the Commissioner's papers since it has chosen not to convert the cross-motions for judgment on the pleadings to ones for summary judgment.

> After a careful review of the transcript of the disability hearing conducted by the ALJ, we find that he failed to adequately develop the record so as to provide Mimms with a full and fair hearing. Specifically, despite the fact that the claimant testified that he had been determined disabled in June of 1977 and had received disability benefits until October 1980, when he voluntarily attempted to resume gainful employment, the ALJ failed to ask one question of the claimant about his prior disability and its relationship to the disability claim he was now pursuing before the ALJ. The existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination.

*Mimms*, 750 F.2d at 185.

## CONCLUSION

For the reasons stated above, Plaintiff's cross-motion, [ECF No. 14](ECF No. 14), is granted and the Commissioner's motion, [ECF No. 12](ECF No. 12), is denied. The Commissioner's decision is reversed and remanded for a rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). On rehearing, the Commissioner shall address the inadequacies identified by the Court and any additional issues that arise.

Dated:   October 9, 2013
        Rochester, New York

    /s/ Charles J. Siragusa
    CHARLES J. SIRAGUSA
    United States District Judge